UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 15-0046 |
| | CIVIL ACTION NO. 18-1072 |
| VERSUS | JUDGE DONALD E. WALTER |
| MAURICE ANTUAN SPEIGHTS | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion to Vacate, Set Aside, or Correct Sentence filed pursuant to 28 U.S.C. § 2255 by the defendant, Maurice Antuan Speights ("Speights"). See Record Document 59. For the following reasons, the motion is **DENIED**.

## I. BACKGROUND

Speights was indicted in this court on March 12, 2015, on one count of sexual abuse within the territorial jurisdiction of the United States, a violation of 18 U.S.C. § 2242(2). The indictment charged that, while at Fort Polk Military Base on October 20, 2013, Speights had engaged in a sexual act with the victim (referenced to herein as "T.S.") while knowing that she was "at that time incapable of appraising the nature of the conduct" and "physically incapable of declining participation in the sexual act . . . [and] communicating unwillingness to engage in the aforementioned sexual act." Record Document 1 at 1–2. The Fifth Circuit later provided the following summary of the offense conduct:

> On the evening of October 19, 2013, [T.S.], then a first lieutenant in the army, attended a gathering of friends near Fort Polk military base in western Louisiana. Speights, who was on close terms with [T.S.], was also present. [T.S.] had one or two shots of liquor over the course of as many hours. She and Speights then traveled to the home of [T.S.]'s friend, Kiasha Hamilton, who lived on-base at Fort Polk. There, [T.S.] had at least two more shots of liquor—one with Speights'

encouragement—and began to show signs of intoxication. Later that night, [T.S.], Speights, and Hamilton went to a bar. By the time the three left at around 2:00 a.m., [T.S.] was noticeably drunk and had to be helped into Hamilton's truck. On the drive back, [T.S.] was slumped over in the backseat and, according to Hamilton, "had basically passed out." When they arrived at Hamilton's house, Speights and Hamilton carried [T.S.], who was largely unresponsive, to an upstairs bedroom. They put [T.S.] into the bed fully-clothed, and she went directly to sleep. Hamilton initially told Speights to spend the night in another room, but when he complained that the room was too hot, Hamilton told him he could sleep on the floor in [T.S.]'s room, which had the only fan in the house. Hamilton then went to her own room to sleep.

[T.S.] testified that she was unconscious throughout the night, except for one point when she briefly awoke to find Speights on top of her. Speights said something like "I got this," and [T.S.] passed out again. The next morning, [T.S.] found Speights lying next to her in the twin-sized bed. [T.S.]'s pants were unbuttoned and unzipped. She immediately felt that something was wrong but could not recall what had happened. Hamilton entered the room, told [T.S.] how drunk she ([T.S.]) had been the previous night, and asked whether [T.S.] remembered various events that had happened. [T.S.] said she did not. [T.S.] then went to the bathroom and noticed blood on a tissue when she wiped herself. [T.S.], who is openly lesbian, had never had sex with a man. Feeling embarrassed, [T.S.] told Hamilton that she and Speights were leaving. [T.S.] and Speights got into [T.S.]'s car, where [T.S.] repeatedly asked Speights what he had done to her. Speights said he did not remember. [T.S.] asked whether he used protection; Speights again said he did not remember. Speights asked [T.S.] whether she would forgive him and whether she would tell anyone. [T.S.] told Speights to get out of the car and called him a coward. When she arrived home, she took a shower.

[T.S.] contacted a sexual harassment representative and went to the hospital for an examination. There, [T.S.] reported that she was sure there had been penetration. A physical examination did not reveal any visible injuries. Initially, [T.S.] made her report restricted out of embarrassment that her chain of command could find out about the incident. But on December 10, 2013, after several sessions of counseling, she granted access to the Army's Criminal Investigation Command (known as "CID"). CID interviewed various witnesses and examined the scene at Hamilton's residence. CID also requested the assistance of the FBI, which located Speights in Florida. In an interview with the FBI, Speights stated that he encountered [T.S.] at the bar and did not know she had been drinking. He and [T.S.] then went to the apartment of one of [T.S.]'s friends, where, according to Speights, the two briefly had consensual sex.

United States v. Speights, 712 F. App'x 423, 424–25 (5th Cir. 2018).

Following a jury trial, Speights was convicted as charged. See Record Document 39. On January 12, 2017, he was sentenced by the undersigned to a 121 month term of imprisonment. See

2

Record Documents 48-49. Speights appealed his conviction and sentence to the United States Court of Appeals for the Fifth Circuit, claiming that there was insufficient evidence to sustain the conviction and that the court's restitution order was illegal. See Record Document 58. The Fifth Circuit reviewed both claims on the merits and affirmed the trial court's judgment on February 9, 2018. See Record Document 58. Speights did not file a petition for certiorari in the United States Supreme Court. See Record Document 59 at 2. Instead, he filed the instant motion to vacate in this court on August 16, 2018.[1] See id. at 1–17. The motion is now fully briefed and ripe for review.

## II. LAW AND ANALYSIS

Following conviction and exhaustion or waiver of the right to appeal, the court presumes that a defendant "stands fairly and finally convicted." United States v. Shaid, 937 F.2d 228, 231–32 (5th Cir. 1991). Relief under Section 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). Furthermore, the collateral challenge process of Section 2255 is no substitute for appeal. A defendant may not raise a constitutional issue for the first time on collateral review without showing cause and prejudice for the procedural bar, or actual innocence. See United States v. Mimms, 43 F.3d 217, 219 (5th Cir. 1995). However, this bar does not apply to ineffective assistance of counsel claims, which may be raised for the first time in a collateral proceeding under Section 2255 regardless of whether the defendant raised the claim on direct appeal. See Massaro v. United States, 538 U.S. 500, 505–09, 123 S. Ct. 1690, 1694-96 (2003).

---

[1] Under the prison mailbox rule, the court treats the date that a pro se inmate surrendered a pleading to the prison for mailing as the effective date of filing. Where this date is not available, the court uses the date that the pleading was received by the court.

Speights raises ineffective assistance of counsel as his sole basis for relief, claiming that his trial counsel's representation was inadequate because she failed to investigate certain aspects of his case. See Record Document 59 at 4. His petition is timely under Section 2255(f) and the ineffective assistance claim is not subject to the exhaustion requirements above. Therefore, the court proceeds to the merits of the issue.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under Strickland, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. See id. at 687, 104 S. Ct. at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. See id. Judges have been cautioned towards deference in their review of attorney performance under Strickland claims in order to "eliminate the potential distorting effect of hindsight." Rector v. Johnson, 120 F.3d 551, 563 (5th Cir. 1997). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. See Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011). "Both of [the Strickland] prongs must be

proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." Williams v. Stephens, 761 F.3d 561, 566–67 (5th Cir. 2014).

Speights alleges that his trial counsel was ineffective because she pushed him to make a plea deal and did not pursue the following avenues of investigation:

1. Taking a statement from Hamilton about why she left the victim, whom she believed to be intoxicated, alone in her apartment with a man she did not know.

2. Obtaining a video of the parking lot of the night club where Speights and T.S. had spent time together, and taking statements from bartenders and servers at the club, in order to disprove T.S.'s claim of being heavily intoxicated.

3. Attempting to determine, based on the results of the sexual assault examination, what T.S.'s blood alcohol level was on the night of the assault.

4. Arguing that T.S.'s refusal to submit to a more invasive sexual assault examination was proof that she had not been raped.

5. Interviewing one or more girlfriends of T.S. to determine if their relationship was placed under strain by her admission that she had had sex with a man.

See Record Document 59 at 16–17; Record Document 70 at 5–6. Speights admits that he had sexual intercourse with T.S. but maintains that the act was consensual and that T.S. was not as intoxicated as she later claimed to be. See Record Document 59 at 15–17. He also requests an evidentiary hearing on this claim. See id. at 12. The government argues that no evidentiary hearing is warranted because the record and Speights's failure to produce any evidence in support of his claim show that he cannot satisfy either of the Strickland prongs. See Record Document 67 at 15.

In his motion Speights complains that he was pressured to make a plea deal. However, no such deal was perfected and Speights was instead convicted after a jury trial. This allegation can

only be construed as argument in favor of his failure to investigate claim. In his unsworn reply memorandum, however, Speights changes his argument and alleges that the government offered a deal but that his attorney only communicated the offer over the phone. See Record Document 70 at 3–5. However, he asserts that he "was denied the opportunity to read, review, and discuss in detail the Government's offer . . . ." Id. Under Strickland, counsel has a general duty to communicate plea offers by the prosecution that may be favorable to the accused. See Missouri v. Frye, 566 U.S. 134, 145, 132 S. Ct. 1399, 1408 (2012). Likewise, counsel may be liable under Strickland if his ineffective advice causes the defendant to reject a favorable plea offer. See Lafler v. Cooper, 566 U.S. 156, 160, 132 S. Ct. 1376, 1383 (2012).

Speights does not allege that the basic terms of the offer were not communicated to him. Although he contends that counsel failed to discuss the deal in detail with him, he already complained that counsel spent too much time trying to convince him to accept a plea deal. See Record Document 59 at 16–17. His conclusory allegations do not show any independent indicia of reliability to merit an evidentiary hearing. See Reed, 719 F.3d at 373. Additionally, even if Speights had raised a factual issue through these unsworn and unsupported allegations, they do not show any deficient performance on counsel's part, as Speights also admits that counsel both advised him of the existence of a plea offer and urged him to accept it--advice which he rejected. Accordingly, Speights does not show a right to relief under the allegations raised for the first time in his reply.

As for the alleged failure to investigate, counsel has a duty under Strickland "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S. Ct. at 2066. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would

have revealed and how it would have changed the outcome of his trial." United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989). Without such a showing, "it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (internal quotations omitted).

Speights does not show the existence or availability of any girlfriend of T.S. as a witness, much less that this unidentified person would have provided testimony favorable to the defense. Additionally, he only offers speculation that the parking lot in question was under video surveillance and that any such video would have contradicted Hamilton's testimony that T.S. was noticeably drunk and had to be helped into Hamilton's car. See Record Document 53 at 44–45. He also offers no affidavits from witnesses who worked at the night club and might have recalled the evening, and so cannot show that any such witnesses would have testified and provided exculpatory accounts. As to his claim that counsel should have asked Hamilton, a friend of T.S., why she had left the intoxicated victim with an unknown man, Hamilton testified at trial that she knew T.S. to be gay and knew Speights as a male friend of T.S.'s. See Record Document 53 at 39–40. T.S. also testified that she had a brother-sister relationship with Speights and that they would regularly drink together. See id. at 59. Given that Hamilton knew Speights, knew that he was a good friend of T.S.'s, and knew that T.S. did not have sex with men, the fact that she left Speights and T.S. sleeping in the same room does not cast doubt on her testimony that T.S. was heavily intoxicated.

Speights complains that counsel did not obtain a blood alcohol level from the sexual assault examination.[2] He also complains of counsel's refusal to press the fact that T.S. had declined a "more thorough exam" – specifically, using a camera and a colposcope – to search for microscopic tears after no obvious trauma was noted. However, he does not show that any blood was collected from that examination or that counsel had any control over the evidence collected in this pre-indictment procedure. Additionally, as the nurse testified, colposcopy and photography are invasive to the victim. See Record Document 53 at 98. Accordingly, Speights does not show that any exculpatory evidence could have been obtained from the examination or that counsel rendered ineffective assistance by failing to press the victim on her decision to decline those procedures.

A district court may deny a Section 2255 motion without holding an evidentiary hearing "only if the motions, files, and records of the case conclusively show that the prisoner is entitled to no relief." United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992). The court may not ordinarily decide contested factual issues by affidavits alone, unless the affidavits are supported by other evidence in the record. See United States v. Hughes, 635 F.2d 449, 451 (5th Cir. 1981). However, the movant must present "independent indicia of the likely merit of [his] allegations" to be entitled to an evidentiary hearing. United States v. Reed, 719 F.3d 369, 373 (5th Cir. 2013). A movant is not entitled to a hearing if he presents only conclusory or speculative allegations, without any evidentiary support. See id. at 373–74.

Speights has not shown deficient performance under any of his allegations, nor has he provided any evidence to support the existence of a contested factual issue on his claims.

---

[2] The nurse who performed the exam described her process in detail and never mentioned collecting blood. See Record Document 53 at 82–90. On cross-examination, she added that no toxicology tests were done. See id. at 96.

Accordingly, he is not entitled to an evidentiary hearing and his Section 2255 motion must be denied.

### III. CONCLUSION

Based on the foregoing analysis, the Motion to Vacate (Record Document 59) is **DENIED**.

Pursuant to Rule 11(a) of the Rules governing Section 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or a District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. In this instance, a certificate of appealability is **DENIED** because the applicant has failed to demonstrate a substantial showing of the denial of a constitutional right.

An order consistent with the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 28 day of January, 2019.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE